UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 7 Case No. 15-40733-CJP |
| GROVE INSTRUMENTS, INC. | ) ) | |
| Debtor | ) ) | |

**MEMORANDUM OF DECISION**

Upon consideration of the Motion to Approve Settlement Agreement and Mutual Release (Docket No. 109) (the "Motion") filed by Janice Marsh, the chapter 7 trustee (the "Trustee") of the estate of Grove Instruments, Inc. (the "Debtor" or the "Estate"), pursuant to which she seeks approval of the Settlement Agreement and Mutual Release (Docket No. 108) (the "Settlement Agreement"), the brief filed in support by Arthur Combs ("Combs"),[1] the Limited Objection filed by Arthur Sherwood, M.D. ("Sherwood"),[2] the briefs filed in opposition by John Cammett ("Cammett")[3] and the Securities Plaintiffs[4] (together with Sherwood and Cammett, the

---

[1] Memorandum of Law in Support of the Motion (Docket No. 116) (the "Combs Brief").

[2] Limited Objection to Motion (Docket No. 124) (the "Sherwood Objection").

[3] Memorandum in Opposition to the Motion (Docket No. 123) (the "Cammett Brief").

[4] "Securities Plaintiffs" are defined herein as Myles Strohl, Eric Strohl, Jacqueline Strohl, Eric Strohl and David C. Evans, as Trustees of the Myles Strohl ESBT Trust, Joseph F. Offshack ("Offshack"), William B. Wicka ("Wicka"), John P. Herron ("Herron") and Cammett. Memorandum in Opposition to the Motion (Docket No. 125) (the "Securities Plaintiffs' Brief"). Cammett filed briefs both individually and as part of the Securities Plaintiffs group.

1

"Objecting Parties"), the arguments made by counsel at a hearing conducted on the Motion, and the entire docket in this case, the Motion is DENIED for the reasons set forth below.[5]

No party in interest has specifically objected to the economic terms of the Settlement Agreement as it relates to the settlement of claims asserted on behalf of the estate.[6] If those economic terms were the only component of the settlement before the Court, the Court would likely find that the Trustee has met her burden under Fed. R. Bankr. P. ("Rule") 9019 to demonstrate that she has exercised reasonable business judgment as to claims held by the estate in entering into the Settlement Agreement because the proposed settlement falls above "'the lowest point in the range of reasonableness,'" *Hicks, Muse & Co. v. Brandt (In re Healthco Int'l)*, 136 F.3d 45, 51 (1st Cir. 1998) (quoting *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983)), but the Trustee has also sought approval of a "bar order," which is an integral part of the settlement and permanently enjoins third parties from pursuing independent, non-derivative claims against officers and directors of the Debtor. *See* Settlement Agreement ¶ 4. The Objecting Parties have opposed this component of the Settlement Agreement. Thus, in addition to determining the reasonableness of the proposed settlement, the Court must also consider whether a non-consensual bar order would be appropriate on this record and whether the Court has both subject matter jurisdiction and adjudicatory authority to enter

---

[5] Unless otherwise specified, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code").

[6] The Securities Plaintiffs state they take no position with respect to the amount of the settlement because they are "unable to assess the wisdom of the Trustee's agreement to accept . . . $500,000 from the issuers of the D&O Policies in satisfaction of [the Estate's] claims . . . against the [Settling Parties], but further state "[w]hile the Securities Plaintiffs have no objection to the Trustee settling [her] claims in the amount [of] $500,000, the condition of a Bar Order is entirely objectionable and unthinkable," Securities Plaintiffs' Brief, 1, 16.

2

such an order as requested by the Trustee. For the reasons discussed below, even if this Court were to determine that it had authority and jurisdiction to enter a non-consensual bar order of claims between third parties in the context of a Rule 9019 settlement motion, this Court would not enter such an order under the facts and circumstances of this case.

I. **BACKGROUND**

A. *The Pending Adversary Proceeding and Securities Litigation*

The Trustee filed an eleven-count complaint (the "Complaint") in this matter, commencing adversary proceeding no. 16-04011 (the "Adversary Proceeding") and asserting claims against former directors Combs, who also served as the Debtor's CEO, Schorr Berman ("Berman"), Richard Burtt ("Burtt"), Donald Jones ("Jones"), and Robert Pueura ("Pueura") (collectively, the "Settling Parties"), along with Cammett and Mark Fuller,[7] additional former directors, and certain parties characterized as prior directors and controlling insiders, Edward A. Schwesinger, Jr., Joseph Morrow, and Robert Brady (the "Investors"). The Trustee seeks to (i) recharacterize payments received by the Investors totaling approximately $1,844,518 (the "Investor Payments") as dividends to shareholders for redemption of their equity contributions while the Debtor was insolvent and (ii) avoid such payments as fraudulent transfers. As to the Settling Parties, the Trustee seeks a determination through the Complaint that they breached their duties of care and good faith under Delaware law when they approved the Investor Payments on the eve of bankruptcy while the Debtor was insolvent and undercapitalized. The Trustee has also

---

[7] Berman, Burtt, Fuller, Jones, and Pueura had sought to withdraw the reference, which request the District Court (Stearns, J.) denied without prejudice as premature in the early stages of the Adversary Proceeding. *See* Order dated June 6, 2016 (AP Docket No. 83). Additionally, all claims against Fuller were dismissed with prejudice pursuant to a Stipulation of Dismissal filed by all parties in the Adversary Proceeding. *See* Stipulation of Dismissal (AP Docket No. 66).

3

asserted claims individually against Combs and Cammett for the avoidance of certain purported fraudulent transfers. With respect to Combs, the Trustee seeks to recover transfers to him pursuant to a severance agreement consisting of (i) the cancellation of his loan obligation to the Debtor in the amount of $50,000 and (ii) post-termination payments in the amount of $38,089.20. As to Cammett, the Trustee seeks the return of payments totaling $11,712 made pursuant to a convertible promissory note with the Debtor.

Combs has filed a proof of claim against the Estate asserting a claim for the Debtor's alleged breach of a severance agreement between the parties in failing to make certain payments and to permit him to exercise or convert certain equity options. *See* Claim No. 20. Further, in the Combs Brief, he has asserted that he has a contingent claim against the Estate arising from the severance agreement, his employment agreement, common law, certain directors' and officers' liability policies, and the Debtor's incorporation documents for indemnification from and against any liability and expense associated with claims brought against him arising from his roles as CEO and director of the Debtor. However, this contingent claim is not explicitly referenced in Combs' proof of claim, and it does not appear that any other Settling Party has filed a proof of claim against the estate asserting a contingent indemnification claim.[8]

All Objecting Parties, with the exception of Sherwood, are plaintiffs in a pending action against Combs in the United States District Court for the Middle District of Florida (Case No. 2: 15-cv-00567-JES-MRM) (the "Securities Action") in which they have filed a four-count complaint. In that action, the Objecting Parties have asserted claims against Combs for (i)

---

[8] Moreover, it is likely that any claim for indemnification, even if allowed to be asserted in the bankruptcy case, would be mitigated by defense and indemnification provided under the D&O policies maintained by the Debtor.

4

damages for violations of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 (the "Federal Statutory Fraud Claim"), (ii) damages the conduct of the Debtor under § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) (the "Federal Statutory Controlling Person Claim"), (iii) rescission of the purchases of the Debtor's securities pursuant to Florida's Securities and Investor Protection Act, Fla. Stat. § 517.301 (the "Florida Statutory Rescission Claim"), and (iv) damages for negligent misrepresentations and omissions (the "Florida Common Law Negligence Claim"). Many of the allegations against Combs appear to arise from representations contained in the Debtor's offering memorandums issued in connection with the sale of its Class B, B-1, B-2 and Convertible Promissory Notes Securities.

Additionally all of the Objecting Parties have filed proofs of claim against the Estate based on various convertible promissory notes and/or stock purchase agreements. Each of the claims of the Securities Plaintiffs indicates that the basis for the claim is "Improper Sale of Securities," attaching copies of the underlying convertible notes and stock purchase agreements, as applicable, which are also the subject of the Securities Action. The Trustee filed an objection to all of the claims of the Securities Plaintiffs, other than Cammett's (Docket No. 157) (the "Claim Objection"). Through the Claim Objection, the Trustee sought to disallow the claims of Jacqueline Strohl (Claim No. 21), Wicka (Claim No. 22), Eric Strohl (Claim No. 23), Heron (Claim No. 24), and Offshack (Claim No. 25) in their entirety and reduce the claims of the Myles Strohl ESBT Trust (Claim No. 26) and Myles J. Strohl (Claim No. 27) to $825,000, respectively. The Trustee asserted all such claims reflected equity interests in the Debtor, not creditor claims. The Securities Plaintiffs, whose claims were objected to, filed a response, adopting the position of the Trustee, *see* Response of Certain Claimants to the Claim Objection (Docket No. 178), and

5

the Court sustained the Claim Objection as unopposed (Docket No. 180) (the "Claim Objection Order").

    B.    *The Proposed Settlement and Affected Claims*

The Trustee has reached a resolution with the Settling Parties, a subset of the defendants in the Adversary Proceeding, to resolve the claims against them as set forth in the Complaint in exchange for a payment of $500,000 (the "Settlement Amount") to be paid on behalf of the Settling Parties from available coverage under the directors and officers insurance policies purchased by the Debtor ("D&O Policies").[9] The Settlement Agreement not only settles the Estate's claims, but is also conditioned upon the approval of a bar order prohibiting all persons, including the Objecting Parties, from asserting any claim against the Settling Parties "arising from actions . . . within the scope of their duties as officers and/or directors of [the Debtor] and is not intended to bar third party claims against the Settling [Parties] arising out of matters completely unrelated to such claims." Settlement Agreement ¶ 5. The terms "within the scope of their duties" and "matters completely unrelated" to the proposed barred claims are not further defined, but the proposed bar order must be read to impact at least some of the claims asserted by the Objecting Parties against these individuals in the pending Securities Action. Specifically, if the bar order is entered in the form requested, it appears that the Florida Statutory Rescission Claim and the Florida Common Law Negligence Claim would be barred.

    C.  *Positions of the Parties*

The parties agree that there is no controlling precedent established in the First Circuit that

---

[9] The Debtor has collectively purchased three polices, the first $2,500,000 in coverage provided by Berkley Insurance Company, the next $2,500,000 by Scottsdale Insurance Company, and the remaining $2,000,000 by Allied World National Assurance Company. *See* Motion ¶ 5.

would dictate the standard under which the requested bar order should be considered by this Court.

The Trustee and Settling Parties advocate that this Court adopt the standards that they characterize have been adopted by the Eleventh Circuit Court of Appeals in *Munford* and its progeny. *See In re Munford, Inc.*, 97 F.3d 449, 453 (11th Cir. 1996); *Apps v. Morrison (In re Superior Homes & Invs.)*, 521 Fed. Appx. 895, 898 (11th Cir. 2013); *Romagosa v. Thomas* (*In re Van Diepen, P.A.*), 236 Fed. Appx. 498, 503 (11th Cir. 2007). They argue that if prosecution of the third-party claims to be enjoined could conceivably have any effect on administration of the bankruptcy estate, the Court has jurisdiction and authority to enter a bar order where it would be "fair and equitable." These parties also find support for their position in rulings of the Second and Seventh Circuit Courts of Appeals. *See Lautenberg Found. V. Picard (In re Bernard L. Madoff Inv. Sec.)*, 512 Fed. Appx. 18, 20 (2d Cir. 2013) (finding § 105(a) should be "construed liberally to enjoin suits that might impede the reorganization process—or, as here, the process of liquidation. . . . Liberal construction reflects the underlying principle of preserving the debtor's estate for the creditors and funneling claims to one proceeding in the bankruptcy court. . . . § 105(a) is properly used to enjoin creditors' lawsuits against third parties where the injunction plays an important part in the reorganization plan or where the action to be enjoined will have an immediate adverse economic consequence for the debtor's estate") (internal quotation marks and citations omitted)[10]; *Caesars Entm't Operating Co. v. BOKF, N.A. (In re Caesars Entm't*

---

[10] Notwithstanding the view of the Trustee and Settling Parties that Second Circuit authority would support their position, it would seem that controlling law in the Second Circuit might dictate a finding that the Court lacks subject matter jurisdiction to bar at least certain claims of the Objecting Parties against the Settling Parties because such claims could not be said to constitute or be derivative of the res of the bankruptcy estate. *See Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 517 F.3d 52, 68 (2d Cir. 2008) ("Manville III"), *rev'd and remanded sub nom Travelers Indem.*

7

*Operating Co.)*, 808 F.3d 1186, 1190-91 (7th Cir. 2015) (vacating order denying injunction of third-party guaranty claims against a non-debtor entity that was the target of a fraudulent conveyance suit by estate, holding that § 105(a) did not foreclose such a procedure, and remanding to the bankruptcy court for further proceedings to determine whether such relief would be appropriate); *Levey v. Sys. Div. (In re Teknek, LLC)*, 563 F.3d 639, 648-51 (7th Cir. 2009) (affirming district court's order vacating preliminary injunction entered by bankruptcy court, but citing favorably *Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1998) where the court affirmed an injunction when, "even though the investor-creditors' fraud claims were personal and distinct from claims that could be brought by other creditors, they were so related to the bankruptcy proceeding that, if not temporarily enjoined, they would have derailed those proceedings' efforts to recover from the class of creditors as a whole").

The Objecting Parties argue that this Court lacks subject matter jurisdiction or adjudicatory authority to enter the requested bar order and that the precedents cited by the Trustee and Settling Parties are distinguishable and are inconsistent with the approach taken in the First Circuit with respect to consideration of bar orders proposed in chapter 11 plans. *See, e.g., Underwriters at Lloyd's, London v. Chancellor Corp. (In re Adley)*, 333 B.R. 587, 610-11 (Bankr. D. Mass. 2005) (referencing cases within the First Circuit, including *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 983-84 (1st Cir. 1995)). The Objecting Parties further argue

---

*Co. v. Bailey*, 557 U.S. 137, 129 S. Ct. 2195 (2009). Further, *Madoff* and *Van Deipen* can be distinguished because each involves derivative fraudulent conveyance claims. The Trustee and Settling Parties do not address the *Van Diepen* court's agreement with the proposition that "the bankruptcy court did not have authority to include in a settlement agreement a release of third party non-debtors . . . where [the] property [of such third party non-debtors] is not part of the bankruptcy estate." *Van Diepen*, 236 Fed. Appx. at 502.

8

that, even if this Court has jurisdiction and authority to bar their independent claims against third parties, doing so would be unfair and inequitable. They assert that the resulting prejudice to the Objecting Parties cannot be justified when viewed against the amount of the proposed settlement versus potential available insurance proceeds that might be available to pay both the Trustee's claims and the claims of the Objecting Parties, the limited participation by the Objecting Parties in the proceeds of that settlement, the lack of any support by the affected Objecting Parties for the proposed settlement, and the limited "relatedness" of the independent claims of the Objecting Parties. The Objecting Parties also assert that the Estate, as a claimant against former directors and officers, has no greater rights to the proceeds of insurance coverage obtained by the Debtor than the rights of the Objecting Parties and that possible competition between the Estate and the Objecting Parties for limited assets that may be available to satisfy a judgment cannot support imposition of a bar order or even a temporary stay. *See Boles v. Turner (In re Enivid, Inc.)*, 364 B.R. 139, 157-58 (Bankr. D. Mass. 2007) (no basis to find that "Plan Trustees' claims for breaches of the fiduciary duties of care and loyalty take precedence over the claims and settlements of the Shareholder Plaintiffs"), *but see Fisher* 155 F.3d at 882 (" the trustee may temporarily block adjudication of claims that are not property of the estate by petitioning the bankruptcy court to enjoin the other litigation, if it is sufficiently 'related to' her own work on behalf of the estate," and explaining that "related to" claims include those "which may affect the amount of property in the bankrupt estate"); *Maxwell v. Megliola (In re marchFIRST, Inc.)*, 288 B.R. 526 (Bankr. N.D. Ill. 2002), *aff'd, Megliola v. Maxwell*, 293 B.R. 443 (N.D. Ill. 2003) (rejecting trustee's request to enjoin shareholders' suit as a violation of the automatic stay, but granting relief under § 105(a)).

9

II. **SUBJECT MATTER JURISDICTION AND ADJUDICATORY AUTHORITY**

"While 11 U.S.C. § 105(a) does grant the bankruptcy court broad powers to issue any order 'necessary or appropriate to carry out the provisions of this title', it is *an extraordinary exercise of discretion* to use that power to stay a third party action not involving the debtor." *Enivid*, 364 B.R. at 149 (quoting *In re G.S.F. Corp.*, 938 F.2d at 1474 (1st Cir. 1991). Most commonly, bankruptcy courts have considered requests for entry of orders "releasing," "staying," "channeling," or "barring" claims by non-debtor entities against other non-debtor entities in the context of confirmation of chapter 11 plans of reorganization. Whether and under what circumstances Chapter 11 plans and related confirmation orders may provide injunctions or "bar orders" that effectively release claims between third parties over the objection of affected parties is the subject of great debate and conflicting circuit court authority. *See* 8 COLLIER ON BANKRUPTCY ¶ 1141.02[5] (16th ed. 2017). Courts that "have expressed a willingness to approve the plan provisions in certain circumstances," *In re Quincy Med. Ctr., Inc.*, No. 11-16394, 2011 WL 5592907 (Bankr. D. Mass. Nov. 16, 2011), include the Second, Third, Fourth, Sixth, Seventh, and Eleventh Circuits, *see In re Drexel Burnham Lambert Grp.*, 960 F.2d 285 (2d Cir. 1992); *Gilman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203 (3d Cir. 2000); *Menard-Sanford (In re A.H. Robins Co.)*, 880 F.2d 694 (4th Cir. 1989); *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648 (6th Cir. 2002); *Airadigm Commc'ns, Inc. v. FCC (In re Airadigm Commc'ns, Inc.)*, 519 F.3d 640 (7th Cir. 2008); *SE Prop. Holdings, LLC v. Seaside Eng'g & Surveying, Inc. (In re Seaside Eng'g & Surveying, Inc.)*, 780 F.3d 1070 (11th Cir. 2015) (favorably citing *Munford,* 97 F.3d 449). The "minority view," held by the Fifth, Ninth, and Tenth Circuits, prohibits non-consensual releases

on the basis that such releases are prohibited by § 524(e), which provides generally that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." *See Bank of N.Y. Trust Co. v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009); *Resorts Int'l v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394 (9th Cir. 1995), *cert. denied*, 517 U.S. 1243, 116 S. Ct. 2497 (1996); *In re W. Real Estate Fund, Inc.*, 922 F.2d 592 (10th Cir. 1990). Even within circuits that have found third-party releases to be permissible, the circumstances of certain cases have led courts to determine that they lack subject matter jurisdiction, *see, e.g.*, *Manville III*, 517 F.3d at 68 (district court lacked subject matter jurisdiction to enjoin where "the claims at issue [were] not derivative of [the debtor's] liability, but rather seek to recover directly from [a third party] for its own alleged misconduct"), or lack the adjudicatory authority to enter an injunction that would effectively release the claims of third parties against non-debtor third parties, *see e.g.*, *Opt–Out Lenders v. Millennium Lab Holdings II, LLC (In re Millennium Lab Holdings II, LLC)*, No. 16-110, 2017 WL 1032992 (D. Del. Mar. 17, 2017) (citing *Stern v. Marshall*, 564 U.S. 462 (2011)) and holding that, with regard to an injunction effecting third-party releases as part of a confirmation order, the bankruptcy court had, at a minimum, "related to" jurisdiction and remanded for bankruptcy court to determine whether it had adjudicatory authority).

The Court of Appeals for the First Circuit has not directly ruled on the issue of third-party releases. *See Monarch Life*, 65 F.3d at 983-84 ("express[ing] no view" on precedents addressing the propriety of third-party releases nor their applicability to the particular plan at issue, but giving preclusive effect to a final order confirming a plan of reorganization and barring certain

11

claims against third parties). Within the First Circuit, however, bankruptcy courts that have considered bar orders or third-party release provisions have generally determined that, in the context of chapter 11 plans of reorganization, such courts have subject matter jurisdiction to enter such orders, but that such jurisdiction should be exercised with restraint and in extraordinary circumstances. *See, e.g., In re Charles St. African Methodist Episcopal Church of Boston*, 499 B.R. 66, 100-02 (Bankr. D. Mass. 2013) (holding that the court had both subject matter jurisdiction and authority to enter order releasing third-party claims); *Quincy Med. Ctr., Inc.*, No. 11-16394, 2011 WL 5592907 at *2-4 (holding that the court had subject matter jurisdiction to enter bar order releasing third-party claims, but conditioning entry of such an order on the consent of the affected parties); *In re Mahoney Hawkes, LLP*, 289 B.R. 285, 297-300 (Bankr. D. Mass. 2002) (recognizing court's authority, but declining to approve after applying factors set forth in *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994))[11]; *In re Salem Suede, Inc.*, 219 B.R. 922, 937 (Bankr. D. Mass. 1998) (declining to

---

[11] The *Master Mortgage* factors that have been considered by courts within this District in the context of plan bar orders are as follows:

> (1) [A]n identity of interests between the debtor and the third-party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate.
> (2) The non-debtor has contributed substantial assets to the reorganization.
> (3) The injunction is essential to the reorganization. . . .
> (4) A substantial majority of the creditors agree to such injunction, specifically, the impacted class, or classes, has "overwhelmingly" voted to accept the proposed plan treatment.
> (5) The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*Master Mtg.*, 168 B.R. at 935.

determine whether a channeling injunction is *per se* prohibited by § 524(e) and concluding that the factors articulated by the *Master Mortgage* court were not present); *In re Boston Harbor Marina Co.,* 157 B.R. 726, 730, 732 (Bankr. D. Mass. 1993) (holding that "[t]he statutory prohibition against discharge of third parties may nevertheless not apply in certain circumstances[,]" but declining to approve plan, in part, because the requested injunctive relief was improper given that the recipients "are contributing nothing to the Plan").

Where an injunction or "bar order" is proposed in the context of a motion to approve a settlement under Rule 9019 in a chapter 7 case, the issues presented are somewhat different because the prohibition on discharging the debt of third parties in 11 U.S.C. § 524(e) does not apply, *see Van Diepen*, 236 Fed. Appx. at 503 (the "problem with releasing third party non-debtors liability in approving a reorganization plan of the debtor is that under 11 U.S.C. § 524(e) the 'discharge of the debt of debtor does not affect the liability of any other entity on . . . such debt'") (quoting *In re Transit Group Inc.*, 286 B.R. 811, 815 (Bankr. M.D. Fla. 2002)), and many of the standards considered by courts in approving injunctions in the Chapter 11 plan context are not directly applicable. *See Enivid*, 364 B.R. at 149 (declining to exercise discretion afforded by § 105(a) to enjoin third-party claims against non-debtor officers and directors); *Adley*, 333 B.R. at 615 (concluding that "[t]he Debtor's case is not a Chapter 11 case, and the parties' attempt to utilize the *Master Mortgage* factors to persuade this Court to enter the injunction upon which the Settlement is conditioned is unsupported by any authority").

While the analysis of third-party releases and bar orders in the context of Rule 9019 settlements may be different, the Court must consider similar subject matter and adjudicatory authority issues. *Compare Munford*, 97 F.3d at 454-5 (finding that the bankruptcy court had

13

jurisdiction to settle litigation involving non-debtors and approving bar order prohibiting the non-settling defendants from seeking contribution or indemnification from the settling defendant in order to effectuate settlement)) *with Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 752-54 (5th Cir. 1995) (holding that the bankruptcy court approving settlement lacked jurisdiction to resolve claims between non-debtors) *and Papas v. Buchwald Capital Advisors, LLC (In re Greektown Holdings, LLC)*, 728 F.3d 567, 578 (6th Cir. 2013) (following *Zale Corp.* and rejecting *Munford*); *see also Healthco Int'l*, 136 F.3d at 53 (declining to interpret order approving settlement to preclude contribution claims and noting "considerable question whether the bankruptcy court possessed the power to make a 'good faith' finding preempting future contribution claims by nonsettling parties" in the circumstances presented); *Manville III*, 517 F.3d at 68 (declining to enforce settlement injunction because the court lacked subject matter jurisdiction to enjoin the claims at issue because they were "not derivative of [the debtor's] liability, but rather seek to recover directly from [a third party] for its own alleged misconduct"); *In re G.S.F. Corp.*, 938 F.2d at 1474 ("there must be some effect on the debtor's estate stemming from the action before there is bankruptcy court jurisdiction to enjoin it"); *Fisher*, 155 F.3d at 882 (stating that trustee could seek temporary injunction of third-party claims if such claims could "affect the amount of property in the bankrupt estate"). Case law regarding the propriety of bar orders in the context of settlement motions is not as well-developed as the law considering similar provisions contained in Chapter 11 plans and is in conflict.

Because the Court holds below that the proposed settlement would not meet the standards that this Court would apply in considering a request for entry of a non-consensual order barring or releasing claims of non-debtor third parties against other non-debtor third parties, the Court is

14

not required to run the considerable gauntlet necessary to determine its subject matter jurisdiction or adjudicatory authority in this instance.

## III.  ANALYSIS

Entry of a bar order would be appropriate over the objection of the parties to be enjoined only after considering (i) the "relatedness" of the claims sought to be enjoined and the identity of interest between the debtor and any non-debtor parties that will benefit from the bar order, (ii) whether the proposed bar order would be fair and equitable to non-debtor parties, including whether objecting parties will have an opportunity to be paid the full or a substantial amount of their claims, (iii) the benefit to the estate, (iv) whether there exists any support by non-objecting parties sought to be enjoined, (v) the consideration being paid by or on behalf of any non-debtor party that will benefit from the proposed bar order, and (vi) whether the effect of the bar order would be consistent with the distribution scheme contemplated by the Bankruptcy Code after considering priority of claims and potential subordination of claims. *Cf. Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 141-42 (2d Cir. 2005); *Dow Corning*, 280 F.3d at 658; and *Charles St.*, 499 B.R. at 100-02 (finding "the *Master Mortgage* factors . . . useful considerations in assessing the propriety of a proposed release"). The foregoing factors are neither exclusive nor conjunctive requirements. *See, e.g., In re Wash. Mut., Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011). If this Court were to determine that it possessed jurisdiction and authority to enter the requested bar order, the discretion to do so should be exercised with restraint and only in extraordinary circumstances not present in this case.

While the settlement amount proposed to be paid to the Estate is substantial, it is not a

large percentage of the total claims proposed to be settled when the asserted claims of the Objecting Parties are considered. The claims involved are complicated in that they involve securities claims and duties of officers and directors, but the claims involve a limited number of investors, officers and directors and two suits. The Securities Action involves one defendant. This is not a case where a substantial number of claimants that would be subject to the requested bar order support entry of the order because it gives effect to a global settlement that serves a perceived "common good."

The record is limited, but the parties appear to agree that up to $7 million in insurance coverage may be available pursuant to the D&O Policies to satisfy all or a portion of the claims of the Objecting Parties and the Trustee, although the policies are "wasting," such that available coverage limits have been and will be reduced by defense costs that the insurers are defending under reservations of rights. No substantial evidence has been proffered as to the collectability of a judgment against Combs or any other potential defendant. On the current record, the Court could not find that the claims asserted in the Securities Action fail to state a claim or lack merit. Significant factual disputes appear to be present, and the Securities Action is in the early stages of litigation.

The requested order would operate to bar certain independent claims that the Objecting Parties have asserted against Combs in the Securities Action. While these claims overlap in some ways with the facts and circumstances giving rise to the claims asserted by the Trustee in the Complaint, the claims asserted in the Securities Action arise directly from alleged acts and omissions in connection with solicitation of investors in convertible notes, the proceeds of which were used to pay early investors. The Trustee's claims largely arise from the subsequent use of

those funds by the Debtor to pay the early investors and the acts and omissions of officers and directors in approving those payments. In the Complaint, the Trustee has not alleged that the directors or officers breached their duties to the Debtor in connection with solicitation of investments by the Objecting Parties in the transactions at issue in the Securities Action. Nothing in the record suggests that the Trustee possesses such claims, leaving the Court to speculate that the Estate does not possess any such claims or that such claims may be limited by exculpation or other provisions in the Debtor's charter documents or other agreements.

It does appear that any potential dividend paid to general unsecured creditors in the bankruptcy case could theoretically reduce certain of the Objecting Parties' claims against the Estate on a dollar for dollar basis,[12] but the claims of the Objecting Parties would have no priority with respect to insurance proceeds. In addition, the recovery by the Estate on account of claims against the Settling Parties to fund such a dividend would be limited to the Settlement Amount, less administrative expense claims and priority claims,[13] as opposed to the larger amount of the claims asserted by the Securities Plaintiffs against Combs as to which insurance proceeds may be available. The effect of the requested bar order would be significant with respect to the Objecting Parties, and the benefit to them uncertain, and possibly modest, in relation to their potential recovery in the Securities Action. No party has questioned the Trustee's

---

[12] A number of the proofs of claims originally asserted by the Securities Plaintiffs have been disallowed in their entirety or reduced substantially. *See* Claim Obj. Ord. As such, those claimants would receive little or no benefit from the proposed settlement and their sole effective remedy would be to pursue the Securities Action.

[13] In the Motion, the Trustee estimates that the Settlement Amount "represents upwards of ten percent (10%) of the potential allowable unsecured claims, without taking into account administrative expenses." Motion ¶ 43.

17

Document     Page 18 of 19

business judgment in seeking approval of the proposed settlement as in the best economic interests of the estate. The benefit of the proposed settlement to Combs is obvious, and the benefit to the Debtor's insurers also seems clear—notwithstanding that the insurers have reserved rights as to whether there is coverage for the claims under the policies. The insurers would be able to limit exposure on the applicable policies to the Settlement Amount, which may be significantly less than the defense costs that may be incurred with respect to litigation of the cases.

Unquestionably, there is a direct effect on administration of the bankruptcy case in that the proposed settlement is predicated on entry of the bar order and the parties have represented that it is a condition precedent to the estate receiving the Settlement Amount, the Trustee and Settling Parties further assert that the Court should exercise jurisdiction and enter the requested bar order as part of the proposed settlement because a recovery by the Objecting Parties in the Securities Action could reduce or eliminate proceeds of the D&O Policies that might otherwise be available to satisfy the Trustee's claims if she prevails. They contend that defense of the Securities Action will reduce available insurance proceeds because of the "wasting" nature of the policies as defense expenses are incurred. It may also be the case that findings in the Securities Action could impact insurance coverage and indemnification claims that may be asserted in the bankruptcy case.

All of this may prove to be true, but the Court is not convinced that the requested bar order would be an appropriate exercise of its discretion under the facts and circumstances of this case after weighing all of the relevant factors, including the relative benefits and burdens of the requested bar order, the relatedness of the claims sought to be enjoined, the fact that no party that

would have an independent, third-party claim that would be barred by the requested order supports its entry, and whether the requested order would be fair and equitable to the Objecting Parties.

IV. **CONCLUSION**

For the foregoing reasons set forth and the authorities cited herein, the Motion is DENIED.

Dated: July 14, 2017

By the Court,

_____
Christopher J. Panos
United States Bankruptcy Judge